UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI T. TYLL,<br>  Plaintiff,<br><br>  v.<br><br>STANLEY BLACK & DECKER<br>LIFE INSURANCE PROGRAM and<br>AETNA LIFE INSURANCE COMPANY,<br>  Defendant. | No. 3:17-cv-1591 (VAB) |

**RULING ON PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

On September 25, 2014, while flying from Paris to New York, Michael A. Tyll died. Lori Tyll, his wife ("Plaintiff"), filed this lawsuit, seeking to recover double indemnity benefits and death and dismemberment benefits, benefits allegedly owed under the Employee Retirement Income Security Act of 1974 ("ERISA"). She alleges that Stanley Black & Decker Life Insurance Program ("Life Plan"), managed by Defendant Stanley Black & Decker, Inc. ("Stanley") and AETNA Life Insurance Company ("AETNA") (collectively, "Defendants"), violated ERISA when it failed to pay these various life insurance benefits.

Defendants now move to dismiss Count III of the Amended Complaint, which seeks reformation under 29 U.S.C. § 1132(a)(3).

For the reasons stated below, Defendant's Motion to Dismiss, ECF No. 33, is **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Lori Tyll, allegedly a beneficiary under the Life Plan, is the executrix and personal representative of the Estate of her husband, Michael Tyll. Am. Compl. ¶ 1, ECF No. 32. AETNA is an insurance company organized under the laws of, and based in, Connecticut. *Id.* ¶ 2. The

1

Life Plan, a welfare benefit plan under ERISA, is "an entity, separate and distinct from its sponsoring company." *Id.* ¶ 3. The Life Plan is located in Connecticut and intended to provide benefits for the employees of Defendant Stanley Black & Decker, Inc. *Id.*

### A. Factual Allegations[1]

Before his death, Michael Tyll worked for Stanley Black & Decker as President of Engineered Fastening. *Id.* ¶ 8. As part of his compensation package, Mr. Tyll allegedly participated in the Life Plan, *id.* at ¶ 9; Lori Tyll, his wife, allegedly was a designated beneficiary under the Life Plan. *Id.* ¶ 12.

#### 1. Plan Coverage

The Life Plan "provides life insurance, accidental death and dismemberment insurance, and business travel insurance benefits . . . ." *See* Life Insurance Program, Plan No. 551 ("Plan") at 1, Compl., Ex. A, EF No. 32-1.[2] According to the Summary Plan Description, ECF No. 32-2, the Plan provided coverage if "you die as a Stanley Black & Decker employee."

The insurance documents stated that "[if] you or your covered dependent, die or suffer a covered loss . . . the plan will pay a benefit." This included "Loss of Life — including exposure and presumed disappearance." Aetna Life Insurance Co. Booklet-Certificate, ECF No. 32-3. Additionally, if a plan participant died "more than 200 miles from [their] principal place of residence" the plan would pay to repatriate the participant's remains. *Id.* at 21. Finally, the plan stipulated that individuals who "die solely and as a direct result of an **accident** while boarding, alighting from, or traveling in a public convenience" will qualify for double indemnity. *Id.* at 22.

---

[1] The Court only considered the factual allegations relevant to Defendants' partial motion to dismiss.
[2] The Plan also states that "the benefits provided under the Plan are set forth in the certificate of insurance booklet attached to the contract . . . ." Plan at 9.

Under the Schedule of Benefits attached to the Complaint, the Plan allegedly stipulated that it would pay "150% of your basic annual earnings, as determined by your employer" up to a maximum of $1,000,000. Schedule of Benefits at 1, ECF No. 32-4.

Ms. Tyll alleges that several provisions of the plan documents contradict or "fill in the gaps" of the remaining document. For example, she alleges that, under the Summary Plan Description, the "Plan Manager" made the determination of eligibility. Am. Compl. ¶ 52(a). She also alleges that the Summary Plan Description defines accidental bodily injury as "exposure to the elements" and that the documents require the Plan to pay "one and one-half times annual base pay," where annual base pay is defined as an employee's "annual base salary." *Id.* ¶¶ 52(b)–(c).

### 2. Mr. Tyll's Death

On September 25, 2014, Michael Tyll allegedly traveled to Paris, France as an employee of Stanley Black & Decker. Am. Compl. ¶ 21. During his return flight from Paris, Mr. Tyll died "due to exposure to the elements and other accidental causes." *Id.* ¶ 18. According to the "determination of a vascular surgeon, Ronald Nath, M.D.," "lower air pressure" in the flight "caused the thrombus to form in Mr. Tyll's leg" that lead to his death. *Id.* ¶ 31. The doctor concluded that "[t]his airline flight caused Mr. Tyll's death; therefore his death was accidental." *Id.*

The flight made an emergency landing in Halifax, Nova Scotia, but the medical examiner pronounced Mr. Tyll dead when the plane reached Halifax. *Id.* ¶ 19. Ms. Tyll alleges that, as required in the plan, Stanley Black & Decker paid for repatriation of Mr. Tyll's remains. *Id.* ¶ 20.

### 2. Denial of Benefits and Appeal

Ms. Tyll allegedly submitted a timely claim for benefits to AETNA. Am. Compl. ¶ 21. She alleges that, despite clear language in the Summary Plan Description, the Plan Manager — Stanley Black & Decker — did not decide her claim. *Id.* ¶ 28. Instead, AETNA allegedly denied her request for benefits on December 23, 2014. *Id.* ¶¶ 27, 29. She allegedly filed two appeals before initiating this lawsuit. *Id.* ¶¶ 30–35.

### B. Procedural History

On September 22, 2017, Ms. Tyll filed the initial Complaint in this case. *See* Compl., ECF No. 1. The initial Complaint asserted claims for benefits allegedly due under 29 U.S.C. 1132(a)(1)(B) against AETNA and the Life Plan. *Id.* ¶¶ 34–39 (AETNA); *id.* ¶¶ 40–45 (Life Plan). She also alleged a claim for reformation under 29 U.S.C. § 1132(a)(3), *id.* ¶¶ 46–51, and a fourth count for attorney's fees and costs. *Id.* ¶¶ 52–53.

Defendants moved to dismiss Count III. Defs. Mot. to Dismiss, ECF No. 24. They argued that the "count fails to state a claim on which relief may be granted due to its bare allegations of fraud and mistake, without alleging the terms of the proposed reformation or alleging mistake or fraud with sufficient definiteness to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Id.*

Before the Court could rule on the motion to dismiss, however, Plaintiff filed an Amended Complaint. *See* First Am. Compl. ("Am. Compl."), ECF No. 32.[3] The Amended Complaint renewed Ms. Tyll's claims for benefits due from AETNA (Count I), Am. Compl. ¶¶

---

[3] The Amended Complaint renders Defendants' first motion to dismiss, ECF No. 24, moot. *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation omitted); *Holliday v. Augustine*, No. 3:14-cv-855 (SRU), 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015) (noting "because the plaintiff timely filed his amended complaint, leave to amend is not required. The plaintiff's motion is denied as moot.").

4

36-41, and the Life Plan (Count II) under 29 U.S.C. 1132(a)(1)(B). *Id.* ¶¶ 42-47. Count III also sought reformation of the Life Plan under 29 U.S.C. § 1132(a)(3). *Id.* ¶¶ 48-52 ("The Court must reform the ERISA plan instruments to include provisions from the SPD . . . and the Federal Insurance Company Certificate . . . to override other documents and to fill in gaps in the set of AETNA instruments . . . ."); *Id.* ¶¶ 48-52. The primary difference between the Complaint and the Amended Complaint is specific language from the Summary Plan Description and other plan documents that she alleges must be reformed. *Id.* ¶ 52.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A court will dismiss any claim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

All of the factual allegations in the complaint will be taken as true. *Iqbal*, 556 U.S. at 678. The factual allegations will also be viewed in the light most favorable to the plaintiff, and all inferences will be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

"Although courts considering motions to dismiss under Rule 12(b)(6) generally must limit [their] analysis to the four corners of the complaint, they may also consider documents that are incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008). This is particularly true if the Amended Complaint "'relies heavily upon [their] terms and effect,' which renders the document[s] 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied by the letters attached" to the complaint); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (when reviewing a judgment on the pleadings, courts assume facts alleged are true "unless contradicted by more specific allegations or documentary evidence").

## III. DISCUSSION

Count III of Ms. Tyll's Amended Complaint seeks reformation under 29 U.S.C § 1132(a)(3). Ms. Tyll alleges that, to the extent the Life Plan seeks to rely on representations in documents other than the Summary Plan Description, that reliance would constitute "mistake or

fraud perpetrated by the Life Plan and its fiduciaries." Am. Compl. ¶ 51. She therefore requests reformation, an equitable remedy, "to override other documents and to fill in gaps in the set of AETNA instruments . . . ." *Id.* ¶ 52. These statements include whether the Plan Manager is required to determine coverage and whether "exposure to the elements will be considered an accidental bodily injury" as stated in the Summary Plan Description, as well as how the compensation will be calculated. *Id.*

Defendants move to dismiss Count III. *See* Defs. Mot., ECF No. 33, Defs. Mem. in Support ("Defs. Mem."), ECF No. 34. They argue that reformation is only appropriate in cases of mistake or fraud, and therefore the Amended Complaint must be evaluated under the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure's heightened pleading standards. Defs. Mem. at 4-5. Defendants claim that dismissal is warranted here because "[t]he fraud alleged is therefore that the Plan is relying on the plan terms" and that a "[m]ere inconsistency in terms between plan documents and summary documents, without alleging any facts to establish that the statements were fraudulent or made with intent to deceive or knowledge of the falsity, is insufficient to allege fraud." Defs. Mem. at 5 (citing *Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F.Supp. 3d 501, 507 (D. Conn. 2015)).

Ms. Tyll argues that dismissal is inappropriate on two grounds. First, she argues that the Life Plan is estopped from moving to dismiss Count III, at least as to the Federal Certificate, based on prior proceedings in the District of Connecticut. Pl. Opp. To the Second Mot. to Dismiss ("Pl. Mem.") at 2-3, ECF No. 38. Second, Ms. Tyll argues that reformation in ERISA cases is also appropriate in cases of "inequitable conduct" other than mistake and fraud. *Id.* at 5. She maintains that she has alleged sufficient detail, "fraud allegations aside," for the Court to

7

conclude "inequitable conduct" if the Life Plan "attempts to ignore key provision in the SPD, and the Federal Certificate, that either fill in gaps or contradict other plan documents[.]" *Id.*

### A. Reformation Under ERISA and Rule 9 of the Federal Rules of Civil Procedure

ERISA covers certain employee benefit plans and provides that "a civil action may be brought" by a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). ERISA's private enforcement provision allows a "participant, beneficiary or fiduciary" to "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision" of ERISA or plans governed by ERISA. *Id.* § 1132(a)(1)(B)(3).

"When a party induces assent to a writing by fraud or intentional misrepresentation, a court may reform that writing to reflect the terms as represented to the innocent party." *Amara v. CIGNA Corp.*, 775 F.3d 510, 524 (2d Cir. 2014). Under ERISA, a "contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct." *Id.* at 525; s*ee also Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 557 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir. 2017) ("To obtain plan reformation under ERISA § 502(a)(3), the Class must show that Foot Locker engaged in fraud or inequitable conduct.").

Reformation claims under 29 U.S.C. § 1132(a)(1)(B) are analyzed under contract law, but according to federal common law. *Amara*, 775 F.3d at 525 ("In applying the standards of contract reformation in the context of ERISA, this Court looks to federal common law rather than any particular state's contract law.").

Defendants argue that any claim for reformation must be evaluated under Rule 9(b) of the Federal Rules of Civil Procedure. The Court agrees.

Rule 9 of the Federal Rules of Civil Procedure provides a heightened pleading standard for certain types of claims. When alleging fraud or mistake, for instance, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). One of the primary purposes of Rule 9 is to "to ensure that a defendant is informed sufficiently of the allegations against him such that he is in a position to answer the complaint and prepare a defense." *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 485 (S.D.N.Y. 2009); *see also Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.").

While the Court has not identified binding precedent establishing the pleading standard for reformation claims pled under the federal common law of ERISA, in interpreting state law reformation claims, courts within the Second Circuit have required those claims to meet Rule 9's more exacting standards. *See, e.g.*, *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 440 (E.D.N.Y. 2011) (applying Fed. R. Civ. P. 9)(b) to reformation claim and stating that "[i]n a claim for contract reformation, plaintiffs may meet the particularity requirement by alleging the nature of the mistake and when it occurred."); *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 416–17 (S.D.N.Y. 2010) ("Thus, whether MSIP states a claim for reformation turns on whether there are sufficient factual allegations of mutual mistake or fraud by Citibank. . . . In addition, the allegations must satisfy the particularity requirements of Rule 9(b)."); *Netherby Ltd. v. G.V. Licensing, Inc.*, No. 92 CIV. 4239 (MBM), 1993 WL 463679, at *5

9

(S.D.N.Y. Nov. 9, 1993) ("However, the [Rule 9(b)] applies also to defendants' counterclaim for reformation based on mistake — specifically, that the failure to include Murjani's representations about the non-exclusivity of the licenses in the AA was a mistake.").

There is no reason why an ERISA claim should not be held to the same Rule 9 standard. Plaintiff argues that dismissal is inappropriate here because the Second Circuit's definition of reformation in *Amara* includes "other inequitable conduct" other than strict fraud or mistake. Pl. Mem. at 5 (quoting *Amara*, 775 F.3d at 525). While this argument may suggest that the Second Circuit's decision in *Amara* means that Rule 9 would not apply at all, Plaintiff also argues that she has sufficiently plead inequitable conduct in order to meet Rule 9's standard here.

In any event, as the court in *Citibank* recognized in evaluating a state law reformation claim, "[m]utual mistake and fraud are not separate causes of action; rather, they are merely different theories by which [plaintiff] might prevail on its single claim for reformation." 724 F. Supp. 2d at 417. The Second Circuit's ERISA standard might encompass a broader range of "inequitable conduct" than a claim arising under state contract law, *see Amara*, 775 F.3d at 525, but that is a question of the underlying conduct that could amount to a proper claim and does not alter the appropriate pleading standards under Rule 9. Reformation claims should still have to meet Rule 9(b)'s requirements. Indeed, Rule 9(b) of the Federal Rules of Civil Procedure is not limited to strictly claims of fraud and mistake, but also includes other, broader claims in other contexts. *Cf. Shin v. Am. Airline, Inc.*, 726 F. App'x 89, 90 (2d Cir. 2018) (affirming dismissal of common law misrepresentation because the complaint failed to meet requirements of Fed. R. Civ. P. 9(b)).

As a result, Ms. Tyll must plead her reformation claim under the heightened standards of Rule 9(b) of the Federal Rules of Procedure. In other words, she "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## B. The Application of Rule 9 of the Federal Rules of Civil Procedure to Count III of the Amended Complaint

Having determined that Rule 9(b) applies here, the Court must determine whether the Amended Complaint pleads with sufficient particularity to ensure Defendants are "informed sufficiently of the allegations against" them and that they are "in a position to answer the complaint and prepare a defense." *McGrath*, 672 F. Supp. 2d at 485. The answer is no.

Defendants argue that the Amended Complaint "provides no more details about any conduct that could be construed as fraudulent or inequitable." Defs. Mem. at 5. Instead, they read Plaintiff's reformation claim to assert "[m]ere inconsistency in terms between plan documents and summary documents" and argue that such inconsistency "is insufficient to allege fraud." *Id.*

As addressed above, in cases of mutual mistake, "plaintiffs may meet the particularity requirement by alleging the nature of the mistake and when it occurred." *Barbagallo*, 820 F. Supp. 2d at 440. For fraud claims, "a complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen*, 711 F.3d at 359 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

The Amended Complaint does not allege mutual mistake. Ms. Tyll instead merely notes what form of relief she requests — "[t]he Court must reform the ERISA plan instruments" to include provisions from a wider range of documents. Am. Compl. ¶ 52. There is the general allegation that, should the plan "rely on terms in ERISA plan instruments other than the SPD,"

11

the information would therefore be "false or misleading, and Ms. Tyll's reliance on those terms was consequently induced by mistake or fraud perpetrated by the Life Plan and its fiduciaries." Am. Compl. ¶ 51.

These factual allegations falls short of meeting Rule 9(b)'s particularity requirement. Dismissal of Count III therefore is appropriate. The Court cannot determine what particular conduct Defendants engaged in that would be inequitable, other than interpreting the plan provisions differently from Plaintiff in this lawsuit. Even then, there is no allegation of intent, or any action on the part of Defendants that lead to Plaintiff's mistake.

Ms. Tyll, however, raises two arguments for why dismissal is inappropriate here. First, as addressed above, she argues that the *Amara* court included "inequitable conduct" when it delineated situations where reformation would be available. Pl. Mem. at 5 (citing *Amara*, 775 F.3d at 525). She quotes *Osberg v. Foot Locker* as defining inequitable conduct as "includ[ing] deception or even mere awareness of the other party's mistake combined with superior knowledge of the subject of that mistake." Pl. Mem. at 5 (quoting *Osberg*, 138 F. Supp. 3d at 558.). She argues that "Allowing the Life Plan to avoid the terms of both the SPD and Federal Certificate would be inequitable given its superior knowledge of the contents of all ERISA plan instruments . . . ." Pl. Mem. at 6.

But Count III, as pled here, only pleads "fraud or mistake," not inequitable conduct. *See* Am. Compl. ¶ 51. And, even assuming Plaintiff had invoked inequitable conduct, there are no facts alleged that would identify for Defendants or the Court the nature of the alleged inequitable conduct.

Second, Ms. Tyll argues that "the Life Plan has taken an inconsistent position in this case and is barred on grounds of either judicial estoppel or equitable estoppel, or both, from asserting

that Count III of the First Amended Complaint must be dismissed at least as it relates to the Federal Certificate." Pl. Mem. at 2.

This argument too fails. Ms. Tyll argues that, based on the prior position, "the Life Plan agreed that the Federal Certificate is a governing ERISA plan instrument." Pl. Mem. at 3. For the sake of argument — without deciding if Ms. Tyll has met the requirements here — the estoppel argument might have been applicable to Ms. Tyll's claims under the Count I and II of the Amended Complaint, but it is unclear how Defendants would be estopped from arguing reformation again. As Defendants admit here: "If the Federal Certificate is in fact part of the contract due to judicial estoppel . . . the Federal Certificate can be enforced in Count One or Count Two." Defs. Rep. Br. at 2, ECF No. 39. There thus would be no need for reformation if, as Plaintiff argues, the Plan is estopped from arguing that the definitions in the SPD and other documents are actually part of the policy. And, regardless, Ms. Tyll must still properly plead Count III to survive a motion to dismiss; a potential admission by Defendants does not relieve them of stating a claim for which relief can be granted.

As a result, Count III has failed to meet the heightened pleading requirements of Rule 9(b). Defendants' partial motion to dismiss therefore is granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Count III of the Amended Complaint, ECF No. 33, is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of September, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE