MANDATE

20-1060-cv
*Tyll v. Stanley Black And Decker Life et. al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand twenty-one.

PRESENT:

>   ROBERT D. SACK,
>   RICHARD C. WESLEY,
>   STEVEN J. MENASHI,
>   *Circuit Judges.*

———————————————————

Lori T. Tyll, individually and as Independent Executrix of The Estate of Michael A. Tyll,

>   *Plaintiff-Appellant*,

v.                                                                                                      20-1060

Stanley Black and Decker Life Insurance Program, Aetna Life Insurance Company,

>   *Defendants-Appellees*.

———————————————————

MANDATE ISSUED ON 05/25/2021

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | JONATHAN M. FEIGENBAUM, Law Offices of Jonathan M. Feigenbaum, Boston, MA (Sean K. Collins, Law Offices of Sean K. Collins, Boston, MA, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | LINDA L. MORKAN (Theodore J. Tucci, *on the brief*), Robinson & Cole LLP, Hartford, CT. |

.

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Lori Tyll, as executrix and personal representative of the estate of her husband, Michael Tyll, sued Stanley Black & Decker Life Insurance Program ("Black & Decker Life" or the "Life Plan") and Aetna Life Insurance Company ("Aetna") (collectively, "the appellees") under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). On appeal, she argues that the district court committed reversible error by reviewing Aetna's denial of benefits under an abuse of discretion standard rather than a *de novo* standard. We disagree.

For the reasons that follow, we affirm the judgment of the district court. We assume the parties' familiarity with the underlying facts, the procedural history of the

2

case, and the issues on appeal.

**I**

*De novo* review is the default standard of review for the denial of ERISA claims "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the administrator has discretion, we review its denial pursuant to an arbitrary and capricious standard. Under an arbitrary and capricious standard, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008). There are no linguistic "talismans" to indicate delegation of discretion. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). "A reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005)).[1]

---

[1] This court reviews *de novo* a district court's grant of summary judgment in ERISA cases decided on the administrative record. *McCauley*, 551 F.3d at 130. Therefore, we review *de novo* whether the district court chose the proper standard of review to evaluate Aetna's decision and we evaluate Aetna's decision under that standard. Summary judgment may be entered only upon a showing "that there is no genuine dispute as to any material fact

3

The district court correctly concluded that the Life Plan delegated discretionary authority to Aetna. First, as *Firestone Tire* held, an arbitrary and capricious standard of review applies if "the benefit plan gives the administrator or fiduciary discretionary authority *to determine eligibility for benefits* or to construe the terms of the plan." 489 U.S. at 115 (emphasis added). Aetna has authority to "determine[] eligibility for and the amount of any benefits" and to "evaluat[e] all benefit claims and appeals under the Plan." App'x 41 (Life Plan §§ 5.02 and 5.04). It therefore has discretionary authority.

Second, as the district court noted, "the Life Plan's language … establishes a subjective standard by which Aetna can make claim eligibility decisions, and therefore delegates discretionary authority to Aetna over benefit claims and denials." Special App'x 42. As § 5.02 of the Life Plan reads, "[t]he insurance company will decide claims and appeals in accordance with its *reasonable* claims procedures." App'x 41 (emphasis added). The word "reasonable" indicates a subjective standard because there is a broad range of permissible choices within which Aetna may resolve claims in accordance with its subjective judgment. *Krauss*, 517 F.3d at 622-23 (holding that the authority to "adopt reasonable policies, procedures, rules and interpretations" and to determine a "reasonable charge" indicates a subjective standard). Because "language that establishes

---

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

a subjective standard" reserves discretion, *id.*, this language in § 5.02 further indicates that arbitrary and capricious review was appropriate.

Third, Aetna created the processes used to determine eligibility. Several other courts have held that granting the power to establish the terms or processes of the plan itself was sufficient to warrant application of the deferential standard of review. *See, e.g., Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (holding that because the plan gave discretion to the plan administrator to, among other things, establish plan rules and procedures, the plan administrator's decision to deny the employee disability benefits would be reviewed for an abuse of discretion); *Richards v. United Mine Workers of Am. Health & Ret. Fund*, 895 F.2d 133, 135 (4th Cir. 1990) (reviewing for abuse of discretion because the plan authorized the administrator "to promulgate rules and regulations to implement [the] Plan" and emphasized that "those rules and regulations shall be binding upon all persons dealing with and Participants claiming benefits under [the] Plan"). That Aetna creates the processes is another indication that it exercises discretionary authority.

Fourth, we have held similar language sufficient to indicate a delegation of discretionary authority in other cases. *See Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 205 n.2 (2d Cir. 2015) ("Benefits will be paid under the Plan only if the Administrator, or its delegate, determines in its discretion that the applicant is entitled to them"); *Krauss*, 517

5

F.3d at 623 (noting that discretionary authority was granted because the plan administrator could "adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration" of the plan); *Pagan*, 52 F.3d at 441 (noting that the plan provided that the administrator "shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of such Committee shall not be subject to further review"); *O'Shea First v. Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) ("The Trustees shall determine any questions arising in the administration, interpretation, and application of the Plan."); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) (noting that the retirement committee was authorized to "pass upon all questions concerning the application or interpretation of the provisions of the Plan"); *see also Kirkendall v. Halliburton, Inc.*, 760 F. App'x 61, 64 (2d Cir. 2019) (noting that the administrator had power to interpret and construct the plan and resolve "all questions that may arise hereunder"). The language of the Life Plan in this case fits comfortably with the language in these other cases in which we have found delegated discretionary authority.

Tyll argues that Black & Decker Life could have more clearly delegated authority to Aetna. Tyll suggests that the Life Plan could have expressly stated that "[d]iscretionary authority arising under Article 5.01(d) is delegated to Aetna," Appellant's Br. 25, or could have "cut and pasted" the words "conclusive and binding" into the grant of authority in

6

§ 5.02(a), *id.* at 26. The question before us, however, is not whether the delegation of authority could have been expressed more clearly but whether the language of the Life Plan adequately communicated a delegation of discretionary authority. It did. Because Black & Decker Life granted Aetna discretionary authority, the district court correctly reviewed the denial of benefits under an arbitrary and capricious standard.

## II

Tyll argues that the district court should have denied Aetna the benefit of the arbitrary and capricious standard of review because of Aetna's failures to comply with ERISA's claims-procedure regulation. In *Halo v. Yale Health Plan*, 819 F.3d 42, 57-58 (2d Cir. 2016), we held that if the plan administrator does not strictly comply with the Department of Labor's regulation governing the processing of an employee's claim, 29 C.F.R. § 2560.503-1, a *de novo* standard of review will generally result. *Halo*, 819 F.3d at 58. Although Tyll raised a colorable argument that Aetna violated the regulation by withholding certain claims procedure documents, the district court concluded that this point was asserted too late and so disregarded it. We cannot say that the district court abused its discretion in doing so. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (reviewing for abuse of discretion the district court's determination that a late-raised claim was untimely).

Tyll was aware since 2015 that she did not have the claims guidelines. And

7

although she pressed for electronic discovery that might have encompassed the guidelines, she never requested that the court specifically compel their disclosure. Moreover, Tyll failed to raise the issue of *de novo* review on this basis in her pleadings, motion for summary judgment, or Rule 56.1 Statement of Undisputed Facts. It was only in her opposition to appellees' motion for summary judgment that she made this argument.

Tyll also argues that the district court should have "tempered" its deference to Aetna's discretion due to a structural conflict of interest it has as the party that both evaluates claims and pays the claims out. Appellant's Br. 36. Under *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008), a lesser degree of deference is warranted only if the conflict affected the administrator's decision to deny benefits in the claimant's particular case. *See Roganti*, 786 F.3d at 218 (noting that the claimant must identify evidence that the conflict of interest "actually affected the administrator's decision"); *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) ("No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision."). Tyll has not identified case-specific conduct demonstrating that the conflict affected Aetna's decision, and therefore the district court did not err in rejecting Tyll's conflict-of-interest argument.

8

III

Finally, even if we were to apply a *de novo* standard, the appellees would still prevail. Tyll's claims center on two issues. First, she argues that her husband's death counts as an accident under the Accidental Death and Personal Loss Coverage policy (the "Policy") insured by Aetna and that the appellees improperly withheld funds based on the incorrect determination that the death was not an accident. Second, she argues that the basic life insurance benefit's $1,000,000 "maximum" is a cap on "basic annual earnings" rather than payable benefits. Neither argument is persuasive.

As to the first argument, Tyll's death was not an "accident" within the meaning of the Policy. The Policy defines "accident" as

> a sudden external trauma that is; unexpected; and unforeseen; and is an identifiable occurrence or event producing, at the time, objective symptoms of a[n] external bodily injury. … The occurrence or event must be definite as to time and place. It must not be due to, or contributed by, an illness or disease of any kind including a reaction to a condition that manifests within the human body or a reaction to a drug or medication regardless of the reason you have consumed the drug or medication.

App'x 115. Michael Tyll died from pulmonary thromboemboli and phlebothrombosis caused by cabin pressure. Not only does cabin pressure not qualify as a sudden external trauma that is unexpected and unforeseen during an airline flight, but this type of reaction falls within the excluded clause as "a reaction to a condition that manifests within the human body." *Id.*

9

As to the second argument, Tyll misinterprets the following Policy language: "As an eligible employee, you automatically receive Basic Life Insurance and [Basic Accidental Death and Dismemberment] Insurance coverage equal to one and one-half times your annual base pay rounded up to the nearest $1,000, up to $1 million." App'x 59. Tyll argues that "up to $1 million" modifies "annual base pay" rather than "coverage." The text is ambiguous, but the context of the Policy documents clarifies its meaning. In describing business travel accident insurance, the Policy explains:

> Business Travel Accident Insurance provides additional life insurance and dismemberment coverage for eligible employees traveling on Company-related business. Stanley Black & Decker pays the full cost of coverage.
>
> If you die or are injured while traveling on Company business, you will receive Business Travel Accident Insurance benefits in addition to Basic Life Insurance and Basic AD&D Insurance benefits.
>
> Full-time associates: Up to five times annual base pay (minimum of $100,000 and maximum of $1,000,000)
>
> Part-time associates (less than 20 hours per week): $100,000

App'x 65. Here, the numbers must refer to the benefit, not to the salary: $100,000 cannot be describing the minimum salary of every full-time employee, much less of part-time associates. Rather, the figure must describe the benefit, which is five times the base salary. This context provides evidence that $1 million is the maximum benefit, not the maximum input permitted from one's base salary. Even if we reviewed Aetna's decision under a *de*

10

*novo* standard, we would reach the same result as the district court.

\* \* \*

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit